**SOUTHERN JAM, INC.,**
**Plaintiff-Appellant,**

v.

**Warren ROBINSON, James G. Connell, et al., Defendants-Appellees.**

No. 80–7713.

United States Court of Appeals,
Fifth Circuit.*
Unit B

May 6, 1982.

Rehearing Denied July 14, 1982.

* Former Fifth Circuit case, Section 9(1) of Public       Law 96–452—October 14, 1980.

Perry & Perry, David E. Perry, Larry B. Mims, Tifton, Ga., for plaintiff-appellant.

Tom W. Thomas, Adel, Ga., for defendants-appellees.

Before HILL and VANCE, Circuit Judges, and LYNNE**, District Judge.

HILL, Circuit Judge:

Southern Jam, Inc. planned to hold an outdoor rock concert in Cook County, Georgia, in the summer of 1977. Twelve days before the scheduled concert date, the Cook County Commission[1] adopted a resolution regulating "mass gatherings."[2] Three days later, the County Commission petitioned the Cook County Superior Court for an order restraining Southern Jam from holding the concert until it complied with the resolution. Southern Jam moved to dismiss the petition arguing, inter alia, that the resolution violated the equal protection and due process clauses of the United States Constitution. After a hearing, the Superior Court judge rendered a decision favoring the Commission: it found the resolution constitutional in all respects except one[3] and enjoined Southern Jam from holding the concert, presumably until a permit was obtained. Robinson, et al. v. Southern Jam, Inc., Civil Action No. 77–140 (Superior Court, Cook County, Georgia, August 17, 1977); Record at 31. Southern Jam filed a notice of appeal but dismissed it on its own two days later. There is no evidence suggesting that any effort was made to comply with the resolution or that the concert was ever held.

Nearly three years later, Southern Jam instituted the present suit in federal court, invoking sections 1983 and 1985(3) of Title 42 of the United States Code and complaining, inter alia, that the actions of the Commission infringed its first amendment freedoms of association and assembly and deprived it of property without due process of law. It sought $25,000 in actual damages and $1,000,000 in punitive damages. The Commission moved to dismiss the complaint, raising the defense of res judicata. The district court sustained that motion on the res judicata theory. We affirm the judgment of the district court.

I.

Southern Jam's argument is simply stated: it maintains that the constitutional issues raised in this suit are different from those adjudicated in the proceeding before the Cook County Superior Court,[4] and

** Honorable Seybourn H. Lynne, U. S. District Judge for the Northern District of Alabama, sitting by designation.

1. The defendants, Warren Robinson, James G. Connell, Aubrey Bates, Bruce Taylor, and R. L. Kendrick, Jr., served as the Cook County Commissioners in 1977. Southern Jam sued them in that capacity and individually.

2. The Commission deemed any event likely to attract two thousand or more persons a "mass gathering." The resolution does not apply to certain fairs and industrial-agricultural exhibitions, recognized religious gatherings, and any indoor gathering not exceeding the maximum seating capacity of the permanently established building in which it will be held. Essentially, the resolution requires the promoter of any applicable mass gathering to obtain a permit from the Commission.

Southern Jam insists that the Clerk of the Cook County Commission assured it that no permit would be required. The Commission remembers that Southern Jam contacted the Clerk, but maintains that the Clerk informed Southern Jam that an appointment would have to be made with the Commission to discuss the proposed concert. Our disposition of this case pretermits the necessity of resolving the factual dispute.

3. The Superior Court held that the provision of the resolution dictating deadlines for permit applications did not apply to Southern Jam.

4. Specifically, Southern Jam maintains that the Cook County Superior Court ruled only on the

therefore the res judicata defense is not available. The argument has appeal. Generally:

> In determining the validity of a plea of res judicata three questions are pertinent: *was the issue decided in the prior adjudication identical with the one presented in the action in question*? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1439–40, 28 L.Ed.2d 788 (1971) (quoting *Bernhard v. Bank of America National Trust & Savings Assn.*, 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942) (emphasis added)). On the other hand, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating *issues that were or could have been raised* in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (emphasis added). Thus, if res judicata applies, Southern Jam's allegation that the issues differ is not persuasive; if the issues before us now could have been raised in the state proceeding, we cannot consider them. The question we must answer, then, is: Does res judicata apply?

The question is somewhat complicated by the fact that we are a federal court, and the prior adjudication was in a state court. Southern Jam is seeking to litigate additional constitutional issues, but it is not seeking to avoid the direct consequences of the judgment of the state court. Furthermore, this is a § 1983 suit, seeking legal redress and arising from allegedly unconstitutional infringements; the constitutional allegations in the state court proceeding were raised in defense against the enforcement of a local resolution.

Some have questioned whether it is appropriate at all for a federal court to find

that a prior state court judgment has any res judicata effect on a subsequent § 1983 action. It has been suggested that one premise of § 1983 is that state courts do not provide an adequate opportunity for the vindication of federal rights. See generally the discussion in Currie, *Res Judicata: The Neglected Defense*, 45 U.Chi.L.Rev. 317, 327–32 (1978). This court has endorsed the notion that Congress intended § 1983 to "serve as a safeguard against the infringement of federally protected rights by a state's judiciary as well as by other branches of state government." *Henry v. First Nat.'l Bank of Clarksdale*, 595 F.2d 291, 298 n.1 (5th Cir. 1979) (citing *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)). We have also said that "we have serious doubt that, in an action brought under § 1983, a party who has been involuntarily forced to litigate his federal constitutional issues in state court would be precluded from raising those issues in a federal court." *Id.*

A recent Supreme Court case, however, suggests that § 1983 does not amend or abrogate principles of res judicata. In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Court held that collateral estoppel was applicable to McCurry's § 1983 action for damages arising from a search and seizure when his constitutional allegations had been adjudicated in a prior state court proceeding. We recognize that res judicata is a broader preclusive doctrine than collateral estoppel. To be sure, the *McCurry* majority itself insisted that it did not answer "the question whether a § 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation." *Id.* at 94 n.5, 101 S.Ct. at 415 n.5; *see id.* at 97 n.10, 101 S.Ct. at 416 n.10. Nevertheless, the *McCurry* court clearly endorses the decisions of those courts which have held that "§ 1983 presents no categorical bar to the applica-

---

constitutionality of the resolution itself, focusing on equal protection and due process issues. The constitutional issues raised in this federal action, it maintains, concern its first amendment freedoms, its property rights, and the

actions of the Commission rather than the resolution itself. Furthermore, it points out, the state action was in equity, whereas this federal action is a legal one.

tion of res judicata ...." *Id.* at 97, 101 S.Ct. at 416. This court has often held just that. *E.g., Bradford v. Bronner,* 665 F.2d 680, 682 (5th Cir. 1982); *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir. 1976); *Brown v. Georgia Power Co.,* 491 F.2d 117 (5th Cir. 1974); *Frazier v. East Baton Rouge Parish School Board,* 363 F.2d 861 (5th Cir. 1966). We have also held that res judicata may be applicable even if the plaintiffs in the federal action were defendants in the state action. *See Billingsly v. Seibels,* 556 F.2d 276, 277 (5th Cir. 1977).[5]

█ We conclude that, as long as the parties had a full and fair opportunity to litigate their constitutional allegations in the prior state proceedings,[6] *see generally Allen v. McCurry,* 449 U.S. at 101, 101 S.Ct.

at 418, the defense of res judicata is viable in a subsequent § 1983 action.[7] We now turn to the question left unanswered by the *McCurry* majority: What is the scope of that defense?

## II.

█ The Federal Judicial Code, at 28 U.S.C. § 1738, mandates that the "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."[8] This statute directs us, a federal court confronted with a res judicata defense to a § 1983 claim,[9] to the law of the

---

5. Our decision in this case in no way questions the rule of *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). In that case, the plaintiffs filed a federal constitutional challenge to a state professional licensing requirement. The district court abstained, reasoning that the state court should have the opportunity to construe the statute in a manner that might moot the constitutional issue. The state court construed the statute broadly, however, and proceeded to decide the federal constitutional issues adversely to the plaintiffs. Instead of appealing directly, the plaintiffs returned to the federal district court, which dismissed the case on res judicata principles. The Supreme Court reversed, holding that a party remitted to state court because of federal court abstention may reserve the right to have the federal court decide the federal constitutional issue. *Id.* at 417, 84 S.Ct. at 465–66. Additionally, decisions of this court have read *England* to allow a state court defendant to reserve federal constitutional issues for subsequent federal court review. *See, e.g., Palmer v. Jackson,* 617 F.2d 424, 432 (5th Cir. 1980).

Southern Jam was not a federal court plaintiff who was deprived temporarily of a federal forum by application of the abstention doctrine. Rather, it was a defendant who failed to raise or reserve certain collateral federal constitutional issues that arose from the basic transaction being litigated in state court. In such instances where the equitable principles underlying the *England* rule do not apply, this court has not been hesitant to apply res judicata principles to the state court judgment without fear of undermining *England. See, e.g., Cornwell v. Ferguson,* 545 F.2d 1022, 1025–26 (5th Cir. 1977); *Jennings v. Caddo Parish School Bd.,* 531 F.2d 1331 (5th Cir. 1976).

6. *Cf. Mack v. Florida Bd. of Dentistry,* 430 F.2d 862 (5th Cir. 1970).

7. Here, we recognize that the court is not an instrumentality for carrying out the legislative, executive or other policy-making organs of state government, but is the branch which is interposed between the state and the person, its mission being to thwart unconstitutional state action. A contention that the state judiciary abandoned that mission and undertook to carry out an unconstitutional state purpose or policy, subjecting its independence to such policy, would present a case not presented here.

8. Section 1738 in effect implements the full faith and credit clause of the United States Constitution, Article IV, § 1.

9. The *McCurry* majority expressly held that § 1983 suits are not excepted from the statutory requirements of § 1738. *Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 416.

We recognize that the Supreme Court has strongly implied otherwise. In *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964), the Court said:

[A]ny conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled ... to accept instead a state court's determination of those claims ... would be at war with the unqualified terms in which Congress ... has conferred specific categories of jurisdiction upon the federal courts ....

We think this broad language in *England* is at odds with both *McCurry* and § 1738, and find it hard to reconcile them. Perhaps it is worth noting that federal jurisdiction over § 1983 claims is not exclusive, but is concurrent, and state actions can be brought under § 1983. *See generally* Note, 78 Colum.L.Rev. 610, 612 n.15 (1978).

state of the court which rendered the prior decision. We are required to give "preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 416. See also The Restatement (Second) of Judgments § 134 (Tent.Draft No. 7, 1980), which suggests that a state court judgment should have the same effect on a federal court as it would have under the rules of res judicata in the courts of the rendering state. *But see Pye v. Department of Transportation of Georgia*, 513 F.2d 290 (5th Cir. 1975) (which held that the federal law of res judicata governs federal question cases in which parties seek to relitigate issues decided in state court proceedings).

▉ Simply stated, if Georgia law would bar Southern Jam from raising these issues in a suit in state court, because a state court has or could have properly and constitutionally adjudicated them already, then it is barred from raising them before us. The law of Georgia is clear. A party must raise any claim against an opposing party which arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, as long as the presence of a third party is not required. Failure to plead that claim then precludes that party from asserting it in a separate, second litigation. Ga.Code § 81A–113(a); *see generally P & J Truck Lines, Inc. v. Carol Insurance Co.*, 148 Ga.App. 3, 251 S.E.2d 72 (1978). Southern Jam's present claim for money damages arose from the very occurrence which led to the state court proceedings against it: the adoption of the resolution by the Cook County Commission. Accordingly, the Commission's res judicata defense prevails.

The judgment of the District Court is AFFIRMED.